[Cite as *State v. Barnhart*, 2023-Ohio-3488.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS  COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 21CA13 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| SHAYNE BARNHART, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED 9/26/2023** |

<u>APPEARANCES</u>:

Eric J. Allen, Columbus, Ohio, for Appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Merry M. Saunders, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for Appellee.

Smith, P. J.

{¶1} Shane Barnhart appeals the July 26, 2021 judgment entry of the Athens County Common Pleas Court.  After entering guilty pleas to three counts in two separate criminal cases involving failure to comply with the order or signal of a police officer and endangering children, the trial court imposed a total sentence of fifty-four (54) months in prison.  On appeal, Barnhart raises two assignments of error challenging the maximum and consecutive nature of his sentence.

{¶2} However, upon review of Barnhart's assignments of error, we conclude that the trial court did not err with regard to imposition of Barnhart's sentence.

Thus, the sole assignment of error is without merit and overruled. The judgment of the trial court is affirmed.

FACTS

{¶3} On August 14, 2019, Shayne Barnhart led law enforcement officers on a high-speed pursuit in the Village of Albany. On July 27, 2020, Barnhart was indicted by the Athens County Grand Jury for Failure to Comply with an Order or Signal of a Police Officer, R.C. 2921.331(B), a felony of the third degree, and Endangering Children, R. C. 2919.22(A), a misdemeanor of the first degree. This indictment was assigned Case Number 20CR0318. During the August 14, 2019 incident, Barnhart fled from officers with his wife, Kayleigh Ryder, and her minor daughter as passengers in his vehicle.

{¶4} On October 19, 2020, Barnhart was indicted for another violation of R.C. 2921.331(B) after another high-speed chase which began in the City of Athens and continued through rural Athens County on September 5, 2020. This indictment was assigned Case Number 20CR0407. During this incident, Kayleigh Ryder was again a passenger in the vehicle operated by Barnhart.

{¶5} Eventually, Barnhart was arraigned on both indictments on December 10, 2020, and entered pleas of not guilty to all counts. He was appointed counsel, ordered held on a cash bond, and remained in jail. The trial court later granted Barnhart a medical furlough effective December 16, 2020. However, on February

3, 2021, the trial court issued a warrant to arrest Barnhart for failing to report back to the Southeastern Ohio Regional Jail as ordered upon release from his medical treatment.

{¶6} On April 21, 2021, the State of Ohio filed a motion to join both indictments for trial. The trial court granted this request. However, on May 26, 2021, Barnhart entered guilty pleas to the three counts contained in both indictments. Sentencing was delayed in order to obtain a pre-sentence investigation report.

{¶7} At sentencing on June 23, 2021, the prosecutor set forth the facts underlying both pursuits. The prosecutor informed that the August 14, 2019 pursuit began when Albany police officers attempted to stop Barnhart for a minor traffic violation. Barnhart stopped briefly, but then continued to drive through Albany in a reckless manner, at times in excess of 90 miles per hour. Barnhart went left of center, failed to observe stop signs, nearly struck two vehicles in oncoming lanes of traffic, passed a large utility truck, and also nearly crashed into a dirt bank during the 14-minute pursuit. The officers lost sight of him.

{¶8} Barnhart was later identified as the driver. Kayleigh Ryder indicated to officers that the three hid in an open field, at Barnhart's insistence, during Barnhart's attempt to evade law enforcement. Ms. Ryder and her daughter both

indicated they were fearful during the pursuit. They held hands and the child closed her eyes.

{¶9} The prosecutor further advised that the September 5, 2020 pursuit began when Deputy Banks of the Athens County Sheriff's Department observed Barnhart at Kentucky Fried Chicken on Stimson Avenue in Athens, did a warrant check, and learned there was an active warrant. Deputy Banks activated his overhead lights and siren but Barnhart did not stop. This time, Barnhart traveled onto Rock Riffle Road, a curvy and well-traveled rural road, again reaching dangerous speeds. Eventually, Barnhart crashed into several trees and fled on foot. Once again, Kayleigh Ryder was with him. She indicated she closed her eyes and prayed during this chase.

{¶10} At Barnhart's initial sentencing on June 23, 2021, Barnhart requested court ordered drug treatment. He indicated he had previously served, in its entirety, a nine-year prison sentence. Upon his release he had been working for a concrete business and properly reporting to his probation officer. Barnhart told the court that after authorities found out Barnhart had been in a fist fight and he was sent to jail for 90 days, he lost his job and his life thereafter spiraled into drugs and alcohol. Barnhart's attorney also requested treatment pursuant to a sentence of community control.

{¶11} Instead, in 20CR0318, the trial court sentenced Barnhart on count one, failure to comply, to 36 months in prison, and on count two, endangering children, to 180 days in jail, the sentences were ordered to be served concurrently. On 20CR0407, the second failure to comply, the court imposed a 36-month prison sentence to be served consecutively. The total prison sentence was 72 months.

{¶12} During imposition of sentence, the trial court stated:

So what's in front of the Court, as you heard by the State, is him doing a hundred miles an hour on Fisher Road and getting airborne because he was scared, apparently going left of center on Marion Johnson Road, and it was a fourteen minute pursuit when he could have killed somebody, a family or families, in addition to himself. * * * [T]hat even happened with his wife * * * but also [a] young child in the car who could have been similarly killed at any long distance among a fourteen-mile chase. In 20CR0318, count one, the Court orders you to serve thirty-six months in prison. Count two, orders you to serve a hundred and eighty days in jail. Count two and one will run concurrent to one another. * * * You're also ordered to a lifetime operator's suspension, as you've demonstrated an inability to show that you can responsibly operate a motor vehicle and * * * the Court doesn't see any future that you'll be able to operate a motor vehicle with any reasonable adult responsibility after those antics of a fourteen-minute pursuit where you put the whole community in jeopardy in Albany, especially at 7:00 p.m. at night. It wasn't like this was at two in the morning * * * when nobody's on the road.

{¶13} Regarding the second failure to comply incident and criminal case, the court continued:

So now we turn our attention to 20CR0407. * * * And this happened at 6:43 p.m. Again, early evening in the fall, people going to football games, going shopping. And again, where do

we find Mr. Barnhart?  Ninety miles an hour on Rock Riffle Road, which unlike most of Fisher or semi parts of Fisher, is not very straight.  And he lost control and struck some trees.  Again, could have killed somebody, could have killed another family. He had his wife in the car.  Could have killed her. * * * Mr. Barnhart didn't learn anything between times A and B . * * * But with all that in mind he's had two incidents, with all that in the background. * * * The Court finds that he potentially could have caused serious physical harm by not obeying a simple signal from a police officer to pull over. * * * So, on the second case, 20CR0407 the Court orders a thirty-six-month prison sentence on that as well and orders that consecutive.

{¶14} However, the trial court conducted a resentencing hearing on July 13, 2021.  As to the second indictment, Barnhart was sentenced to an 18-month prison sentence, to run consecutive to the first case, 20CR0318, for a total of 54 months instead of 72 months.  This timely appeal followed.[1]

## ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO THE MAXIMUM TERM OF INCARCERATION FOR COUNT ONE.

II.     THE TRIAL COURT ERRED IN ORDERING THE TWO COUNTS BE SERVED CONSECUTIVELY.

## STANDARD OF REVIEW

{¶15} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2):

---

[1]During the appellate proceedings, the court ordered the parties to engage in supplemental briefing of the issue of a possible Crim.R. 11 violation and whether the court can sua sponte raise the issue.  The parties complied, agreeing that the trial court fulfilled its duty with regard to the requisites of Crim.R. 11 and  further agreeing that  Barnhart's plea was  knowing, intelligent, and voluntarily given.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

*See State v. Hughes,* 41th Dist. Adams No. 21CA1127, 2021-Ohio-3127, at ¶ 37.

## LEGAL ANALYSIS

1. Maximum Sentence.

{¶16} Under the first assignment of error, Barnhart asserts that the maximum sentence as to Count One was not justified because the trial court erroneously deemed his conduct as a "substantial risk." Barnhart concedes that he violated R.C. 2921.331(B), failure to comply with an order or signal of a police officer. However, Barnhart points out that neither his wife nor the child or any other individuals were killed or injured in the chase. Barnhart concludes that his conduct did not constitute a worst form of the offense. Barnhart requests this court to vacate the sentence of the trial court and remand for a hearing. Based upon our

review of the case law and facts herein, we find this assignment of error has no

merit.

{¶17} Barnhart pled guilty to a third-degree felony commonly referenced as

"failure to comply" under R.C. 2921.331(B).  This provision states that "[n]o

person shall operate a motor vehicle so as willfully to elude or flee a police officer

after receiving a visible or audible signal from a police officer to bring the person's

motor vehicle to a stop."  A violation of R.C. 2921.331(B) rises to the level of a

third-degree felony if a jury or judge finds proof beyond a reasonable doubt that

either:

> (i) The operation of the motor vehicle by the offender was a
> proximate cause of serious physical harm to persons or property.
> (ii) The operation of the motor vehicle by the offender caused a
> substantial risk of serious physical harm to persons or property.

¶18} R.C. 2921.331(C)(5)(a)(i)-(ii).  "The plea of guilty is a complete

admission of the defendant's guilt." Crim.R. 11(B)(1).  A guilty plea allows the

state to obtain a conviction without following the otherwise difficult process of

proving his guilt beyond a reasonable doubt.  *State v. Day,* 2019-Ohio 4816, 149

N.E.3d 122, at ¶ 22 (4th Dist.).  " ' More is not required; the court has nothing to

do but give judgment and sentence.' "  *Day,* supra, quoting *State v. Morgan,* 181

Ohio App.3d 747, 2009-Ohio-1370, 910 N.E.2d 1075, ¶ 23-24 (1st Dist.).  " '[A]

counseled plea of guilty is an admission of factual guilt which removes issues of

factual guilt from the case * * *.' "  *Day*, supra, quoting *State v. Wilson*, 58 Ohio

St.2d 52, 388 N.E.2d 745 (1979), paragraph one of the syllabus.  Thus, while there

is no evidence that Barnhart caused actual serious physical harm to any person or

property, by entering a plea to this count, Barnhart admitted that his criminal

conduct caused a substantial risk of serious physical harm to people or property.

*See State v. Harper,* 2017-Ohio-8693, 101 N.E.3d 628, at ¶ 19 (1st Dist.); *State v.*

*Costello,* 8th Dist. Cuyahoga No. 104456, 2017-Ohio-294, at ¶11.

{¶ 19} R.C. 2921.331(C)(5)(b) sets forth factors a trial court must consider

when sentencing an offender for failure to comply if R.C. 2921.331(C)(5)(a)

applies.  Under this provision, trial courts must not only consider the factors set

forth in sections 2929.12 and 2929.13 of the Revised Code when determining the

seriousness of an offender's conduct in committing failure to comply, they must

also consider additional factors set forth in R.C. 2921.331(C)(5)(b) to determine

the seriousness of the offender's conduct.  Pursuant to R.C. 2921.331(C)(5)(b), the

trial court was required to consider the following factors when determining what

sentence to impose on Barnhart's offenses:

 (i) The duration of the pursuit;

 (ii) The distance of the pursuit;

 (iii) The rate of speed at which the offender operated the motor vehicle
        during the pursuit;

 (iv) Whether the offender failed to stop for traffic lights or stop signs during
       the pursuit;

(v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;

(vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;

(vii) Whether the offender committed a moving violation during the pursuit;

(viii) The number of moving violations the offender committed during the pursuit;

(ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense.  R.C. 2921.331(C)(5)(b)(i)-(ix).

{¶20} At sentencing, the prosecutor stated:

I think it is appropriate to again relay those facts to the Court because of the severity of the actions of Mr. Barnhart.  The first is the August 14th of 2019 fourteen-minute pursuit in Albany.  He was attempted to be pulled over for a traffic violation based on the fact that his vehicle was missing both a front and rear bumper.***  The police report goes into detail about the reckless manner in which Mr. Barnhart was driving through Albany.  He was on Marion Johnson Road in excess of ninety miles per hour.  He went left of center a number of times.  He went through stop signs at a high rate of speed and nearly missed two vehicles in the oncoming lanes of traffic.  He did not stop at the intersection of Baker road and Radford Road, which I'm sure the court is well aware of the travel on Radford Road. ***This was, I believe, 7:00 p.m. He did not (inaudible) the intersection at that point***going approximately forty to forty-fie miles per hour.  An oncoming vehicle was actually forced off the road and landed into a ditch at that point.  He traveled onto Fisher Road reaching speeds upwards of a hundred miles per hour.  He went around a large utility truck, almost colliding with a large dirt bank. ***[T[he passengers in the vehicle did admit that they were both the front seat passenger as well as the child in the rear seat. That is the sum and substance of the fleeing part of that.

{¶21} As previously indicated, Kayleigh Ryder and her daughter expressed their fearfulness to the officer, and the fact that Barnhart made them hide in the field with him.

{¶22} After reviewing the entire record, we find that the record supports the trial court's maximum sentence of 36 months on the failure to comply offense charged in Case No. 20CR0318. As the trial court and the prosecutor observed, the duration of the high-speed pursuit was 14 minutes through the community of Albany. Barnhart was traveling in excess of 90 m.p.h. Barnhart committed numerous moving violations during the pursuit, which appear to have included reckless operation, traveling left of center, failure to control, stop sign violations, and improper passing. Regarding "any other factor that indicates the offender's conduct is more serious than conduct normally constituting the offense," the court noted that it was approximately 7:00 p.m., not 2:00 a.m., where less traffic would be likely, and that the entire community of Albany was placed at risk.

{¶ 23} Barnhart, as in *Costello, supra*, argues that although he could have caused serious damage during the pursuit, he did not. Thus, he claims that his failure to comply was not the worst form of the offense. We disagree. The failure-to-comply statute makes the offense a third-degree felony if either of two conditions are found—that the offender caused serious physical harm to persons or property, or that the offender caused a substantial risk of serious physical harm to

persons or property.  R.C. 2921.331(C)(5)(a)(i)-(ii).  As previously discussed, by pleading guilty to the count, Barnhart admitted that he caused a substantial risk of serious physical harm to persons or property.  Moreover, based on the factors discussed by the trial court indicating Barnhart caused a substantial risk of serious physical harm to people or property, we cannot find that the 36-month maximum sentence is clearly and convincingly unsupported by the record or otherwise contrary to law.

{¶24} The underlying facts in this case persuade us that  Barnhart's conduct created a strong possibility that harm could occur.  While fortunately it appears no serious physical harm to persons or property did occur, "[i]t is only the strong possibility that harm could occur that creates culpability under R.C. 2921.331(C)(3).  It is clear that simply because an offender is fortunate enough not to actually cause harm is of no consequence."  *State v. Gasioworowski,*  8th Dist. Cuyahoga No. 80000, 2002-Ohio-976, at *3 (Mar. 7, 2001), citing *State v. Semenchuk,* 122 Ohio App. 3d 30, 701 N.E.2d 19 (8th Dist.1997).  Based on the foregoing, we find no merit to Barnhart's first assignment of error.  Accordingly, it is hereby overruled.

2. <u>Consecutive Sentence.</u>

{¶25} Under the second assignment of error, Barnhart asserts that the

court "manufactured" an indictment with two separate charges under R.C. 2921.331, and then claims it must impose mandatory consecutive terms. Barnhart argues that the legislature did not intend that people who run from law enforcement officers should be sentenced more harshly than people who run from criminal activities. Barnhart cites the trial court's statement at the initial sentencing: "[T]he court believes it has to run consecutive as a matter of, as a matter of law." Barnhart asks this court to vacate the consecutive sentence of the trial court and remand for a hearing.

{¶26} The State of Ohio points out that Barnhart was sentenced for conduct which occurred on two different dates with two differing facts.[2] The State directs us to *State v. Harper, supra*, which held that by operation of law the trial court is not required to make the findings usually required for consecutive sentences prior to sentencing a defendant to consecutive terms for two counts of failure to comply. *Id*. at ¶ 16. The State concludes that even though the trial court made the usual required consecutive sentence findings, Barnhart's sentences must be served consecutively as a matter of law. At the outset, we again observe that Barnhart entered knowing, intelligent, and voluntary pleas to three counts contained in two

---

[2] This is the incident which began in Athens when Appellant was spotted at a Kentucky Fried Chicken Restaurant in Athens and failed to stop for Deputy Banks, traveled over 90 m.p.h. on Rock Riffle Road, a well-traveled wooded area, went into oncoming traffic and struck several trees. This time only Kayleigh Ryder was with him but the airbag deployed on her side and Appellant fled on foot. She advised officers she shut her eyes and prayed. At sentencing, the prosecutor showed the trial court a video from the officer's vehicle showing Appellant jump over the hood of the car, flee on foot, and leave his possibly injured wife.

separate indictments. Alleging a "manufactured" indictment is nonsensical and disingenuous.

{¶27} R.C. 2929.41(A) establishes a statutory presumption in favor of concurrent sentences. *State v. Schumacher*, 4th Dist. Adams No. 21CA1145, 2022-Ohio-2934, at ¶ 11; *State ex rel. Hunley v. Wainright,* 163 Ohio St. 3d 301, 2021-Ohio-803, 170 N.E.3d 16, at ¶ 13. Ordinarily, we would analyze Barnhart's consecutive sentence argument under R.C. 2953.08(G)(2)(a) for compliance with R.C. 2929.14(C). *State v. Gwynne*, 158 Ohio St. 3d 279, 2019-Ohio-4761, 141 N.E.3d 169, at ¶ 16. As interpreted in *Gwynne,* an appellate court reviews consecutive sentences under R.C. 2953.08(G)(2), which permits a reviewing court to "increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds * * * 'that the record does not support the sentencing court's findings,' under [R.C. 2929.14(C)(4)] or 'the sentence is otherwise contrary to law.' " *State v. Hughes,* 4th Dist. Adams No. 21CA1133, 2022-Ohio-107, ¶ 9, quoting *State v. Cot trill,* 4th Dist. Ross No. 20CA3704, 2020-Ohio-7033, ¶ 11. R.C. 2929.14(C)(4) provides for the imposition of consecutive sentences:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the

offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a)  The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)  At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)  The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶28} Here, the trial court determined that a consecutive sentence was necessary to protect the public from future crime by Barnhart and to punish him. The court also found that a consecutive sentence was not disproportionate to the seriousness of Barnhart's conduct and to the danger Barnhart poses to the public. The court further found that Barnhart's history of criminal conduct demonstrated that a consecutive sentence was necessary to protect the public from future crime by Barnhart. The court noted Barnhart was on post-release control at the time of his offenses.

{¶29} However, Barnhart was sentenced on his guilty pleas to two separate counts of   R.C. 2921.331(B), failure to comply with order or signal of police officer.  As previously noted, R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."  R.C. 2921.331(C)(5) further provides that, " (a) [a] violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:  * * * (ii) [t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."  Both indictments used this language and the trial court cited this language at sentencing.

{¶30} Furthermore, R.C. 2921.331(D) provides, " [if]f an offender is sentenced pursuant to division (C)(4) or (5) of this section for a violation of division (B) of this section, and if the offender is sentenced to a prison term for that violation, the offender *shall* serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender."  (Emphasis added.)  Thus, R.C. 2921.331(D) requires that any sentence imposed for failure to comply with an order or signal of a police officer would be served consecutively, and not concurrent with any other sentence imposed.  This requirement arising by operation of law was discussed in *Harper* and *Costello, supra*.

{¶31} The trial court was not required to make consecutive sentence findings in order to sentence Barnhart to consecutive sentences for failure to control. It did. Even if Barnhart's argument was that his sentence was not supported by the record, we would be unable to agree. Based on the underlying facts in this case as discussed above at length, we cannot find that Barnhart's sentence is clearly and convincingly not supported by the record or that his sentence is otherwise contrary to law. The trial court did not err with regard to imposition of the consecutive sentence. Barnhart's second assignment of error is also without merit and is hereby overruled.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Hess, J.: Concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**